IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Centre County Tax Claim Bureau     :
Upset Tax Sale of:     :
    :   No. 697 C.D. 2022
Tax Parcel No. 04-007-050-0000     :   Submitted: June 6, 2023
Reputed Owner(s): Dorothy Etters et al.   :
    :
Appeal of: Olga Levi     :

BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
             HONORABLE LORI A. DUMAS, Judge
             HONORABLE STACY WALLACE

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE DUMAS                              FILED: August 8, 2023

Olga Levi (Appellant) appeals from an order of the Centre County Court of Common Pleas (trial court), dated and filed on June 1, 2022,[1] which set aside the upset tax sale of property owned by John J. Harakal IV (Owner). In support of its decision, the trial court credited evidence that the Centre County Tax Claim Bureau (Bureau) had not properly notified Owner that his property was subject to a pending sale. After review, we affirm.

## I. BACKGROUND[2]

On September 21, 2021, the Bureau sold Owner's property to Appellant at an upset tax sale.[3] Afterwards, the Bureau notified Owner of the sale

---

[1] The Centre County Prothonotary mailed notice of the order on June 8, 2022. *See* Pa.R.Civ.P. 236.

[2] The relevant facts are not in dispute. We derive this background from the trial court's opinion, which is supported by the record. *See* Trial Ct. Op., 6/1/22, at 1-3.

[3] The property is located at 611 Blanchard Street in Spring Township. *See* Appellant's Ex. A, Realty Transfer Tax Statement of Value, 1/27/16.

and filed a consolidated return with the trial court. The trial court issued a decree *nisi*, and Owner timely filed objections asserting improper notice of the sale.

Subsequently, the Bureau discovered a defect in notice and refunded Appellant's payment. In January 2022, the trial court granted Appellant leave to intervene and enjoined the Bureau from taking any further action pursuant to the Real Estate Tax Sale Law (Tax Sale Law).[4]

The trial court held an evidentiary hearing at which Director Jennifer Pettina credibly testified that the Bureau had not properly notified Owner of the sale. For her part, Appellant conceded that she lacked evidence to the contrary.

On June 1, 2022, the trial court set aside the tax sale of Owner's property.[5] Appellant timely appealed to this Court.[6]

## II. ISSUES

Appellant asserts that the trial court erred in setting aside the upset tax sale. She develops four arguments in support of this assertion. First, according to Appellant, the Bureau sent notice of the sale to the correct address, as well as an alternate address ascertained from tax assessment records. Second, Appellant argues

---

[4] Act of July 7, 1947, P.L. 1368, *as amended*, 72 P.S. §§ 5860.101–5860.803.

[5] The trial court similarly set aside the tax sale of second property owned by George Z. Kern. *See Trial Ct. Op.*, 6/1/22, at 6. That property is not at issue in this appeal.

[6] On June 17, 2022, Appellant filed a motion with the trial court, styled as a motion for post-trial relief. The trial court interpreted this as a motion for reconsideration but did not enter a ruling denying the motion until September 6, 2022, long after the 30-day appeal period had expired. *See* Trial Ct. Op., 9/6/22; *see also Sewickley Valley Hosp. v. Dep't of Pub. Welfare*, 550 A.2d 1351, 1353 (Pa. Cmwlth. 1988) (observing that a trial court lacks jurisdiction to consider a motion for reconsideration after expiration of appeal period); Pa.R.A.P. 1701(a). Accordingly, the decision of the trial court entered on September 6, 2022, constitutes a legal nullity. *Sewickley Valley Hosp.*, 550 A.2d at 1353. However, also on September 6, 2022, the trial court issued an order relying on the September 6th opinion for purposes of Pennsylvania Rule of Appellate Procedure 1925. To the extent the trial court's analysis therein is responsive to issues preserved in Appellant's Pa.R.A.P. 1925(b) statement, we will consider it. Despite this procedural irregularity, Appellant timely appealed. *See* Notice of Appeal, 6/28/2022.

that the Bureau's "judgment" regarding proper notice is not dispositive. Third, Appellant challenges the trial court's deference to the Bureau and suggests that a settlement between the Bureau and Owner should not be binding on Appellant. Finally, according to Appellant, a successful bidder's equitable interest in a property is not subordinate to an owner's right to redeem the property sold at an upset tax sale.[7]

### III. DISCUSSION[8]

### A. Service upon Owner was Improper

In her first issue, Appellant asserts that the efforts of the Bureau to serve notice of the upset tax sale upon Owner were appropriate and sufficient to satisfy the requirements of due process. Appellant's Br. at 13. Appellant notes, for example, that the Bureau complied with its obligation to send notice by certified mail, and when that was unsuccessful, by first class mail. *Id.* Finally, according to Appellant, the Bureau exercised reasonable efforts to reach Owner at an alternate address. *Id.* Although Appellant concedes that these efforts were unsuccessful, she argues that the "practicalities and peculiarities of this case" should absolve the Bureau of its failure to effectuate service upon Owner. *Id.* (citing *Famageltto v. Cnty. of Erie Tax Claim Bureau*, 133 A.3d 337 (Pa. Cmwlth. 2016)).

The purpose of the Tax Sale Law is to collect taxes, not to strip away citizens' property rights. *Sampson v. Tax Claim Bureau of Chester Cnty.*, 151 A.3d 1163, 1167 (Pa. Cmwlth. 2016). There are due process implications in the taking of

---

[7] Appellant's issues have been paraphrased. *See* Appellant's Br. at 2-3. The Bureau has not filed a robust response to Appellant's arguments. *See* Bureau's Br. at 2 ("The Bureau takes no position at this time on whether this sale was valid.").

[8] In tax sale cases, we review whether the trial court abused its discretion, rendered a decision that lacked supporting evidence, or clearly erred as a matter of law. *In re Lehigh Cnty. Tax Claim Bureau Upset Sale of September 19, 2018*, 263 A.3d 714, 717 n.4 (Pa. Cmwlth. 2021).

property; therefore, a tax claim bureau must prove strict compliance with the statutory provisions of the law. *See id.*; *Rice v. Compro Distrib., Inc.*, 901 A.2d 570, 575 (Pa. Cmwlth. 2006). A failure to comply with the notice provisions of the Tax Sale Law will nullify a sale. *Sampson*, 151 A.3d at 1168.

In relevant part, Section 602(e)(1) of the Tax Sale Law requires that a tax claim bureau provide a tax-delinquent property owner notice of an upset tax sale by certified mail at least 30 days prior to the sale. 72 P.S. § 5860.602(e)(1).[9] If service by certified mail is unsuccessful, then the bureau must provide notice by first class mail at least 10 days prior to the sale. Section 602(e)(2) of the Tax Sale Law, 72 P.S. § 5860.602(e)(2). If notification by mail is unsuccessful, or if there are "circumstances raising a significant doubt" as to whether service was successful, Section 607.1(a) requires the bureau to "exercise reasonable efforts to discover the whereabouts" of the owner and notify the owner of the tax sale. 72 P.S. § 5860.607a(a).[10] The legislature has provided examples of "reasonable efforts," but these examples are "merely illustrative." *Clemmer v. Fayette Cnty. Tax Claim Bureau*, 176 A.3d 417, 421 (Pa. Cmwlth. 2017).

---

[9] Section 602 requires notice of a tax sale in three ways: publication, posting, and mail. 72 P.S. § 5860.602. If the subject property is owner-occupied, Section 601(a)(3) also requires personal service on the owner by a sheriff. 72 P.S. § 5860.602(a)(3). These additional notice requirements are not relevant in this case.

[10] Section 607.1(a), added by the Act of July 3, 1986, P.L. 351, provides a non-exhaustive list of the Bureau's additional notification efforts:

> The bureau's efforts shall include, but not necessarily be restricted to, a search of current telephone directories for the county and of the dockets and indices of the county tax assessment offices, recorder of deeds office and prothonotary's office, as well as contacts made to any apparent alternate address or telephone number which may have been written on or in the file pertinent to such property.

72 P.S. § 5860.607a(a).

4

Upon exhausting reasonable efforts to notify the owner, a tax claim bureau shall place in the property file a notation describing its efforts, and the sale may proceed. *Id.* In reviewing the validity of an upset tax sale, the court must focus on the activities of the bureau. "The focus is not on the alleged neglect of the owner, which is often present in some degree, but on whether the activities of the [b]ureau comply with the requirements of the statute." *Sampson*, 151 A.3d at 1168 (cleaned up). "It matters not that the reasonable effort may not have borne fruit. An effort must still be undertaken." *Clemmer*, 176 A.3d at 422 (citation omitted); *see also Famageltto*, 133 A.3d at 340 (requiring "ordinary common sense business practices to ascertain proper addresses") (citation omitted).

Here, it was undisputed that Owner has resided at 845 North Allen Street, State College, Pennsylvania, since 2006, not at the subject property. Notes of Testimony (N.T.) Hr'g, 5/31/22, at 19. The Bureau was unsuccessful in effectuating service at this address, by either certified or first class mail. *See* Appellant's Ex. A, Certified Mail Receipt (indicating notice was "unclaimed"); Appellant's Ex. A, First Class Mail Envelope (indicating notice was undeliverable because address was "vacant"); N.T. at 12 (testimony from Director Pettina conceding that the Bureau did not notify Owner of the pending upset tax sale).[11]

The inability of the Bureau to effectuate service by mail triggered a further requirement that the Bureau exercise reasonable efforts to locate and notify Owner. However, the Bureau did not offer evidence that it undertook any additional efforts to effectuate service, let alone "reasonable efforts" as required by Section

---

[11] Director Pettina testified in relevant part:
> Q. Ms. Pettina, do you have any reason to believe the Tax Claim Bureau provided notice of this sale to [Owner] before the sale occurred?
> A. From the information I've [seen] on the files, no, I do not.

N.T. Hr'g, 5/31/22, at 12.

607.1(a).[12]     Accordingly, the trial court did not err in nullifying the tax sale of Owner's property. *Sampson*, 151 A.3d at 1168; *Clemmer*, 176 A.3d at 422.

Moreover, the absence of any effort to effectuate service on Owner renders Appellant's reliance on *Famageltto* misplaced. In that case, the owners challenged the upset tax sale of their property, asserting in part that the tax claim bureau had failed to conduct reasonable efforts to discover their whereabouts because it had not telephoned them regarding the upset tax sale, ultimately sent notice by first class mail to an alternative address too late to effectuate actual notice, and never attempted to personally serve notice upon them at the alternative address. *Famageltto*, 133 A.3d at 344.

The *Famageltto* Court rejected these assertions. When service by mail proved unsuccessful, the bureau had searched its internal records, as well as records of the assessment office, office of deeds and wills, the prothonotary's office, and the local tax collector. *Id.* at 344. It also searched the telephone directory. *Id.* The *Famageltto* Court concluded that these efforts were reasonable and satisfied the requirements of Section 607.1(a). *Id.* Moreover, the Court specifically rejected the owners' suggestion that the bureau should have telephoned them or attempted

---

[12] Appellant has suggested on appeal that the Bureau attempted to effectuate service at an alternate address. *See* Appellant's Br. at 13. There is evidence that the Bureau identified a former address of Owner. Appellant's Ex. A, Centre Cnty. Taxroll for parcel 36-004-,144-,0000-, 9/24/21 (indicating an updated mailing address for owner; noting address changed in 2006; suggesting an extra notice was sent to this address; but no response received); *see also* N.T. Hr'g at 19 (Owner testifying that he had moved to his current address in 2006). Director Pettina could not confirm if the Bureau had sent notice of the sale to this former address but observed that the date of this document was September 24, 2021, three days *after* the upset tax sale. N.T. Hr'g at 10. Thus, the record does not support Appellant's suggestion.

6

personal service, noting that the Tax Sale Law imposed no such obligations on the bureau.[13]  *Id.* at 345.

Regarding the timeliness of mail service to the alternative address, the *Famageltto* Court observed that the bureau had mailed the notice more than 10 days prior to the date of the sale in accordance with Section 602(e)(2) of the Tax Sale Law.  *Id.* at 345.  The Court also noted that the owners had conceded that the notice may have been in their mailbox for some time because they had received a notice from the post office that the mailbox was too full.  Thus, the owners lacked actual notice simply because they failed to retrieve their mail.  Under these circumstances, the *Famageltto* Court concluded that the bureau had acted "in a manner reasonably calculated to provide [the owners] notice . . . and, therefore, satisfied the demands of due process."  *Id.* at 346.

In stark contrast to the efforts of the tax sale bureau in *Famageltto*, here, when mail service was unsuccessful, the Bureau made no further attempts to discover the whereabouts of Owner and notify him of the upset tax sale prior to its occurrence.  *Cf. Famageltto.*  On this record, therefore, the activities of the Bureau were insufficient and did not comply with the requirements of the Tax Sale Law. *Sampson*, 151 A.3d at 1168; *Clemmer*, 176 A.3d at 422.

**B. The Bureau must prove Strict Compliance with the Tax Sale Law**

In brief remarks, Appellant next asserts that the trial court erred in its deference to the Bureau's judgment that service upon Owner was improper.  *See* Appellant's Br. at 13-14.  According to Appellant, the statements from the Bureau conceding that it failed to effectuate service upon Owner cannot negate evidence of

---

[13] Section 607.1(a) requires a bureau to "search . . . current telephone directories for the county;" it does not require the bureau to call property owners.  72 P.S. § 5860.607a(a).

the Bureau's compliance with the additional notification efforts set forth in Section 607.1(a) of the Tax Sale Law. *See id.* at 14. This claim is devoid of merit.

First, the premise of this claim is flawed. The trial court did not "defer" to the Bureau's judgment. Rather, the Bureau presented evidence, and the trial court made findings based on that evidence. *See* Trial Ct. Op., 6/1/22, at 2-3.

Second, because a tax claim bureau has a constitutional duty to notify a delinquent property owner of an upset tax sale, the tax claim bureau bears the burden of proving strict compliance with the notice provisions of the Tax Sale Law. *Famageltto*, 133 A.3d at 339. An upset tax sale must be set aside if a tax claim bureau fails to meet this burden. *Sampson*, 151 A.3d at 168. This is so whether a reviewing court rejects a tax claim bureau's assertion that its notification efforts were reasonable, whether a bureau fails to offer any evidence of its efforts, or whether a bureau concedes that its efforts were flawed. *See, e.g.*, *In re Upset Tax Sale of September 29, 2014*, 163 A.3d 1072, 1078 (Pa. Cmwlth. 2017) (rejecting a tax claim bureau's argument that its notification efforts were sufficient and that it was not required to search current telephone directories of the county); *Clemmer*, 176 A.3d at 422-23 (affirming the trial court's decision to set aside a tax sale where the bureau offered no evidence of its efforts); *In re Lehigh Cnty. Tax Claim Bureau Upset Tax Sale of September 19, 2018*, 263 A.3d 714, 722 (Pa. Cmwlth. 2021) (*Lehigh*) (discerning no error in trial court's decision to set aside an upset tax sale when the bureau conceded on the record that it had not effectuated mail service and that its personal service was flawed).[14]

Here, the Bureau conceded that it had not effectuated mail service upon Owner. N.T. Hr'g at 12. The Bureau failed to offer evidence that it had exercised

_____

[14] The *Lehigh* Court's remarks concerning the trial court's decision to set aside the tax sale based on the concession of the tax claim bureau were *dicta* but nonetheless persuasive.

8

additional, reasonable efforts to locate the whereabouts of Owner and notify him of the sale. *See generally* N.T. Hr'g. Further, Appellant conceded that she had no evidence to demonstrate the Bureau's compliance with the notice provisions of the Tax Sale Law. *See* N.T. Hr'g at 17. Accordingly, the Bureau failed to meet its burden of proof. *Famageltto*; *Clemmer*; *Lehigh*.

### C. Appellant was not Bound by the Bureau's Concession

Appellant's third argument is unclear. The question presented by Appellant suggests that the trial court (1) deferred to the Bureau and (2) concluded that a settlement between the Bureau and Owner was binding on Appellant. *See* Appellant's Br. at 2-3, 15.[15] However, Appellant does not develop an argument in support of this question presented. Rather, Appellant makes two seemingly disparate assertions. First, according to Appellant, the trial court's reliance upon *Lehigh* was misplaced. *Id.* at 15. Second, Appellant asserts that "she is [not] bound by any representation by the Bureau that its efforts to provide notice of the sale to [Owner] were insufficient[.]" *Id.* at 16.

In *Lehigh*, the tax claim bureau proceeded with an upset tax sale even though it had failed to properly notify the delinquent owner. 263 A.3d at 715-16. The owner challenged the upset tax sale, but neither the owner nor the bureau

---

[15] Appellant presented the issue as follows:

> Whether the trial court erred as a matter of law in setting aside the upset tax sale because it was bound to defer to the Bureau as to whether the statutory notice requirement had been met, and that the acquiescence of the Bureau and the owner to a settlement was binding on a purchaser who had properly intervened.

Appellant's Br. at 2-3. The first part of Appellant's question presented is addressed in section III.B., *supra*. The trial court did not defer to the Bureau; it considered evidence and made findings thereon. The second part does not accurately reflect the record in this case. There was no evidence introduced at the hearing that the Bureau and Owner had entered into a settlement agreement, nor did the trial court conclude that such agreement was binding on Appellant. *See generally* N.T. Hr'g; Trial Ct. Op., 6/1/22.

notified the successful bidders of the challenge. *See id.* The trial court held a hearing on the owner's objections, at which the bureau conceded that it had not notified the owner of the sale. *See id.* The bureau and the owner also presented evidence that they had agreed on a payment schedule for the delinquent taxes. *See id.* On this record, the trial court set aside the upset tax sale. *See id.* Learning of this decision, the successful bidders intervened and appealed. *See id.*

The sole issue before the *Lehigh* Court was whether successful bidders are indispensable parties in an owner's challenge to the upset tax sale of his property. 263 A.3d at 717. Ultimately, the Court concluded that successful bidders have an equitable interest in the property and, therefore, have standing to intervene and participate in a proceeding challenging the sale. *Id.* at 718-22. However, this interest is insufficient to transform successful bidders into indispensable parties in the proceedings, nor are they entitled to notice of those proceedings. *Id.*

In this context, the *Lehigh* Court set forth the statutory procedures for conducting an upset tax sale, including a review of the notification requirements both before and after an upset tax sale has occurred. *See id.* at 717-19. In cursory fashion, after disposing of the relevant arguments, the Court addressed the underlying decision to set aside the tax sale. *Id.* at 722. According to the *Lehigh* Court, considering the bureau's admission that notice was improper and the parties' agreement on a payment plan for the delinquent taxes, the trial court was required to set aside the upset tax sale and could do so without first hearing from the successful bidders. *See id.* at 723.

Here, the trial court set forth general principles underlying the Tax Sale Law and outlined the procedures required for conducting an upset tax sale. *See* Trial Ct. Op., 6/1/22, at 3-5; Trial Ct. Op., 9/6/22, at 3-7. In so doing, the trial court cited

10

to relevant statutory provisions and case law, including *Lehigh*. *See, e.g.*, Trial Ct. Op., 6/1/22, at 4. While Appellant is correct that the precise legal issue before the *Lehigh* Court differs from the issue presently before this Court, the trial court's reliance on *Lehigh* for relevant principles of law was not misplaced. Further, the *Lehigh* Court's observation that a tax claim bureau's admission constitutes sufficient evidence that the bureau failed to comply with the notice requirements of the Tax Sale Law is persuasive. Therefore, *Lehigh* is not inapposite.

Finally, Appellant's assertion that the Bureau's representations are not binding echoes Appellant's earlier arguments, misconstrues the record, and is otherwise devoid of merit. The trial court did not conclude that Appellant was bound by the representations of the Bureau. At the evidentiary hearing in this matter, the Bureau presented evidence; thereafter, the trial court considered and credited this evidence, and it then ruled accordingly. Moreover, the trial court granted Appellant leave to intervene in the proceedings and afforded her an opportunity to refute the Bureau's evidence. Indeed, Appellant testified at the hearing but was unable to offer evidence that Owner received proper notice of the upset tax sale. *See* N.T. Hr'g at 17 (Appellant denying any knowledge that proper notice occurred).

### D. Trial Court did not recognize a Right of Redemption

In her fourth argument, Appellant suggests[16] that the trial court may have relied on Owner's statutory right of redemption[17] in rejecting Appellant's

---

[16] Appellant states, "To the extent that the trial court relied upon this purported 'right of redemption[,]' . . . it was error, and its decision setting aside the upset sale should be reversed." Appellant's Br. at 17.

[17] Section 501(a) of the Tax Sale Law permits a property owner to cure a tax delinquency, and thus "cause the discharge of tax claims and liens entered against the property . . . ." 72 P.S. § 5860.501(a). However, this right of redemption is "extinguished at the conclusion of the actual sale even if no bid is made for the upset sale price, unless the trial court sustains objections or

efforts to uphold the upset tax sale. *See* Appellant's Br. at 16-17. There is no support for this assertion in the record.

In its initial decision setting aside this tax sale, the trial court quoted language from the *Lehigh* Court's analysis of a successful bidder's equitable interest in property purchased at an upset tax sale. *See* Trial Ct. Op., 6/1/22, at 5 (quoting *Lehigh*, 263 A.3d at 714). This portion of the *Lehigh* Court's analysis is irrelevant to the legal issues pertinent to this case, nor did it form the basis of the trial court's decision. *See generally id.* Rather, the trial court properly determined that neither the Bureau nor Appellant could establish the Bureau's strict compliance with the notice requirements of the Tax Sale Law. *Id.* at 5-6. Moreover, in its subsequent opinion adopted for Pa.R.A.P. 1925 purposes, the trial court omitted this language. *See* Trial Ct. Op., 9/6/22.

## IV. CONCLUSION

For the reasons set forth above, Appellant's several arguments on appeal lack merit. The trial court considered evidence presented by the parties and concluded that the Bureau failed to provide Owner with proper notice that his property was subject to an upset tax sale. Based on this evidence, the trial court properly set aside the sale. Accordingly, we affirm.

_____
LORI A. DUMAS, Judge

_____

exceptions to the sale and sets aside the sale." *Pacella v. Washington Cnty. Tax Claim Bureau*, 10 A.3d 422, 429 (Pa. Cmwlth. 2010) (citations omitted).

12

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Centre County Tax Claim Bureau     :
Upset Tax Sale of:     :
     :  No. 697 C.D. 2022
Tax Parcel No. 04-007-050-0000     :
Reputed Owner(s): Dorothy Etters et al.  :
     :
Appeal of: Olga Levi     :

# **O R D E R**

AND NOW, this 8th day of August, 2023, the order of the Centre County Court of Common Pleas, dated and filed June 1, 2022, is AFFIRMED.

_____
LORI A. DUMAS, Judge